IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

NONA CORLEY, on behalf of C.M.C., a minor, )
                       Plaintiff, )    Case No. 16-CV-337-JED-FHM
v. )
NANCY A. BERRYHILL,[1] )
Acting Commissioner of the Social )
Security Administration, )
                       Defendant. )

## OPINION AND ORDER

Before the Court is the Report & Recommendation (R&R) (Doc. 22) of United States Magistrate Judge Frank H. McCarthy on review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying the plaintiff's child, C.M.C,[2] disability benefits. Judge McCarthy recommends that the Court affirm the Commissioner's decision finding the plaintiff not disabled. Plaintiff filed a timely Objection to the R&R (Doc. 23), requesting that the Court reject the R&R and enter an "outright award of benefits" (*id.* at 6). In the alternative, plaintiff seeks a remand with instructions for further administrative proceedings. (*Id.*). Reviewing the Objection de novo, the Court has considered the Administrative Record (Doc. 12), the parties' briefs, the R&R, plaintiff's Objection, and the Commissioner's Response, and concludes that the Commissioner's determination should be affirmed and the R&R should be accepted.

Plaintiff was 10 years old on the alleged date of onset of disability and was 12 years old on the date of the ALJ's decision. She claims to have been under disability since November 19, 2012

---

[1]     Nancy A. Berryhill is now the Acting Commissioner of the Social Security Administration. Pursuant to Fed. R. Civ. P. 25(d), the Court Clerk is directed to substitute Nancy A. Berryhill as the defendant in this matter in place of former Commissioner Carolyn W. Colvin.

[2]     The Court hereafter will refer to the child as "plaintiff," as Judge McCarthy did in the R&R.

as a result of a learning disability. In her objections, plaintiff argues that the ALJ erred in (1) determining that plaintiff's impairments did not functionally equal a listing and (2) making credibility determinations. (Doc. 23 at 1).

I.   **Standard of Review**

Pursuant to Fed. R. Civ. P. 72(b)(3), "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." The Court's task of reviewing the Commissioner's decision involves determining "whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* "It is 'more than a scintilla, but less than a preponderance.'" *Newbold v. Colvin*, 718 F.3d 1257, 1262 (10th Cir. 2013) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). The Court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006) (quoting *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

II.   **Discussion**

Plaintiff argues that the ALJ erred in determining that plaintiff's impairments did not functionally equal a listing. (Doc. 23 at 1-6). Under the Social Security Act, a child under the age of 18 "shall be considered disabled" if she is not engaged in substantial gainful activity and "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." *See* 42 U.S.C. § 1382c(a)(3)(C)(i), (ii). The regulatory procedures for evaluating disability for children are set out at 20 C.F.R. § 416.924. If the child is "not doing substantial gainful activity," the child's mental or physical impairments will be considered to determine if the child has "an impairment or combination of impairments that is severe." *Id.* If the impairments are not severe, the child will be determined not disabled. If the child has an impairment or combination of impairments that are severe, the claim is reviewed to determine whether the child's impairment "meets, medically equals, or functionally equals the listings." *Id.*

If a child has a severe impairment that does not meet or medically equal any listing, the next step is to determine whether the impairment "results in limitations that functionally equal the listings." 20 C.F.R. § 416.926a(a). To functionally equal the listings, the impairment "must be of listing-level severity, i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain." *Id.* The domains are "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for yourself; and, (vi) Health and physical well-being." *Id.*, § 416.926a(b)(1). A limitation is "marked" in a domain when the "impairment interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.*, § 416.926a(e)(2). "Marked" means "'more than moderate' but 'less than extreme'" and "is the equivalent of the functioning [that would be expected to be found] on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* A limitation is "extreme" in a domain when the impairment "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.*, § 416.926(e)(3).

3

"Extreme" means "more than marked" and is given "to the worst limitations," but "does not necessarily mean a total lack or loss of ability to function." *Id.*

After setting out the applicable regulatory procedures for evaluating plaintiff's claim of disability, the ALJ determined that: (1) plaintiff has not engaged in substantial gainful activity since the application date; (2) plaintiff has the severe impairment of learning disability; (3) the plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments; and (4) the claimant does not have an impairment or combination of impairments that functionally equals the severity of the listings. (Doc. 12 at 21-33 of 254). In making the determination of an absence of functional equivalency, the ALJ considered the six domains and determined that plaintiff: (1) has a marked limitation in acquiring and using information; (2) has less than marked limitation in attending and completing tasks; (3) has no limitation in interacting and relating with others; (4) has no limitation in moving about and manipulating objects; (5) has no limitation in the ability to care for herself; and (6) has no limitation in health and physical well-being. (*Id.* at 26-33 of 254). Because the ALJ did not find an extreme limitation in one domain or marked limitations in two domains, the ALJ determined that plaintiff is not disabled.

Plaintiff argues that a review of the "full file" will reveal plentiful "evidence contrary to the ALJ's findings." (Doc. 23 at 2). Plaintiff heavily relies upon plaintiff's Woodcock Johnson III test scores and selected teacher reports and suggests that the ALJ should have found that plaintiff has an extreme limitation, rather than a marked limitation, in the domain of acquiring and using information. (*See id.* at 4). Plaintiff acknowledges that the Court is not to reweigh the evidence and that the Court's task is to determine whether the ALJ's determination is supported by substantial evidence. (*Id.* at 2).

4

The Court has considered the entire record, including Nona Corley's testimony, various test scores, teacher reports and observations, the childhood disability evaluations, various disability reports, education records, psychological evaluation and related IQ testing, and Individualized Education Program (IEP) records. The ALJ accurately summarized those records (*see* Doc. 12 at 24-26 of 254) and applied the proper regulatory procedures (*see id.* at 22-33 of 254). The ALJ considered the Woodcock Johnson III scores and noted low academic skills, difficulties with basic reading skills, comprehending written materials, and expressing ideas in written form. (*Id.* at 27 of 254). The ALJ also properly noted that the state agency medical expert reports (which were prepared at the initial level of disability determination and again on reconsideration) determined that the plaintiff had "marked" impairment in the domain of acquiring and using information (*id.* at 28 of 254), and he agreed with those opinions. (*id.*).

The record generally reflects that plaintiff has had significant difficulty and was below grade level with respect to reading and writing and in certain problem-solving skills, but that she was in the range of average intelligence and functioning in other respects. One of the teacher reports, which was completed on February 1, 2013, reflected that plaintiff was in the third grade, but was at a first grade level in reading and written language and a second grade level in math. (*Id.* at 138 of 254). On the domain of acquiring and using information, that teacher assessed plaintiff as having obvious to very serious problems on every category (*see id.* at 139 of 254), and indicated that plaintiff struggles with basic reading skills (*id.*). In another teacher report, dated November 11, 2013, in the domain of acquiring and using information, a teacher rated plaintiff as having from slight to serious problems on each category (*id.* at 188 of 254) and indicated that plaintiff receives direct instruction in special education for reading and language arts, with her reading and written expression skills significantly below grade level (*id.*). That teacher noted that

the plaintiff's "math skills are only slightly below grade level." (*Id.* at 193 of 254). The IEP records recite Woodcock Johnson III scores from September 21, 2011, SAT-10 grade equivalency results from May 2012, PIAT-R results from November 19, 2013, OCCT scores from April, 2013, and grades as of September 12, 2012 and March 11, 2013. (*Id.* at 199, 216, 228 of 254). The raw test data from the Woodcock Johnson testing in 2011 and a summary of those results are also included in the record. (*Id.* at 243-250 of 254).

While plaintiff suggests that the ALJ did not consider the full record when making his finding of "marked" as opposed to "extreme" impairment in the domain of acquiring and using information, the ALJ clearly considered all of the information contained in these records in making his determination. (*See id.* at 25-28 of 254). Although the Woodcock Johnson III testing indicated problems, the determination of functional equivalence will not be made in reliance "on any test score alone," and "[n]o single piece of information taken in isolation can establish whether [the child has] a 'marked' or an 'extreme' limitation in a domain." *See* 42 U.S.C. § 416.926a(e)(4)(i); *see also id.*, § 416.924a(a)(1)(ii) ("We consider all of the relevant information in your case record and will not consider any single piece of evidence in isolation. Therefore, we will not rely on test scores alone when we decide whether you are disabled."). The ALJ evaluated the entire record in accordance with the legal standards established in the statutes and regulations, and the ALJ's determination that plaintiff had a marked (and not extreme) impairment in the domain of acquiring and using information is supported by substantial evidence. Thus, the ALJ did not error in making the determination that plaintiff's impairments did not functionally equal a listing.

On the front page of plaintiff's Objection, plaintiff indicates that she also objects to credibility determinations, but she does not provide any explanation of that proposition. The Court finds no error as to that issue.

## III. Conclusion

Having found no reversible error in the ALJ's decision, upon concluding that the ALJ applied the correct legal standards and the decision is supported by substantial record evidence, and agreeing with Judge McCarthy's R&R, the Court overrules plaintiff's Objection (Doc. 23). Accordingly, the Court **accepts** the R&R (Doc. 22) and the recommendation that the Commissioner's decision finding plaintiff not disabled be affirmed. Accordingly, the Commissioner's decision is **affirmed**. A separate Judgment will be entered forthwith.

DATED this 21st day of September, 2017.

_____
JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE